30779. ELLIS *v.* THE STATE.

DECIDED MAY 15, 1945.

W. G. *Neville*, for plaintiff in error.

*Fred T. Lanier, solicitor-general*, contra.

BROYLES, C. J. The defendant was indicted for murder and convicted of voluntary manslaughter. Her motion for a new trial was overruled, and she excepted to that judgment. The evidence, direct and circumstantial (the defendant introduced none), authorized the jury to find the following facts: The defendant and her husband were living alone in a house in Bulloch County, Georgia, on July 4, 1944; on the afternoon of that day she saw her husband get in an automobile with Gatson Mincey and two women; it was Mincey's car and he was driving; the car, with the four persons in it, was driven away, and the defendant remarked to Jim Henry, a bystander, that when her husband got home "it's going to be hell;" at about 12 o'clock that night, Mincey drove her husband home and immediately drove off; her husband found the door closed with a small latch on the inside and he forced the door open and broke the latch and got inside, and the defendant killed him by shooting him with a shotgun; no one else was in the house or saw the shooting; the dead man was found alone in the house that night shortly after the killing, the defendant having gone to her mother's house.

The defendant in her statement to the jury said that on the night in question she had the latch on the door, and that when Mincey drove up and her husband got out of the car "it sounded like they were drinking, and my husband was raving and raring and I was afraid to open the door, and he cursed me and said if I didn't open the door he would break it in and kill me, and he busted it in and reached for me and I jumped out of bed and got the gun over in the corner and shot him." She also stated that he often had come home at night drunk and beaten her, "and have me running up and down the road to my mother's house at all times of the night." However, she failed to introduce her mother, or any other person, as a witness, to support her statement as to such beatings or as to the drunkenness of her husband. And Mincey testified, without contradiction, that on the night in question neither he nor the deceased was drunk or drinking, and that when the latter got out of his car at 12 o'clock he was not drunk or cursing, but was quiet and sober. The father of the deceased also

testified "that last cotton-picking time, in August, she [defendant] told me that if he [her husband] went off that night and came back and stuck his head in that door she was going to blow his head off and that I could see him dead."

Another man testified that in August, last year, he went with the deceased to his home and spent the night there, sleeping with him in the back room, and that the defendant came in the room carrying a shotgun; the deceased asked her what she was going to do with the gun, and she did not say anything, "and they got to scuffling with it and I got the gun away from them and put it in the bed with us and kept it there the rest of the night, and the next morning he [the deceased] took the gun up to his dad's."

Bill Strickland, a deputy sheriff, testified that he arrested the defendant on the night of the killing, and that she stated that "O. P. [her husband] came in and that she would not open the door for him, and that he busted the door open, and when he did that she shot him. . . As to whether or not she said he was making any assault upon her, well, no, sir, she said she refused to let him in the house, and he shoved the door open, and when he did that she shot him."

The prosecution also introduced in evidence two very affectionate love letters addressed to the defendant and signed by W. L. Carter, one dated January 26, 1944, and the other February 3, 1944. These letters were found in the defendant's house on the night of the killing, and in her statement to the jury she admitted having received them. In our opinion, the above-stated evidence would have authorized a conviction for murder; but parts of the defendant's statement to the jury authorized the verdict returned, it being well settled that the jury have the authority to believe a part or parts of the defendant's statement and to reject the other parts.

Special ground 1 of the motion for new trial, complaining of the admission of certain evidence, is too defective to be considered by this court, in that the ground fails to allege that the evidence was admitted *over the movant's objection.*

Special ground 2 complains of the admission of the testimony of a witness about the finding of two letters in the defendant's house on the night of the killing. The ground is somewhat con-

fused, but it seems to us that the substantially hearsay parts of the testimony were excluded by the court, and that the parts admitted were not hearsay nor inadmissible for any reason assigned.

Special ground 3 assigns error on the admission in evidence of the two love letters heretofore referred to. The evidence tended to show a motive for the defendant to get rid of her husband, and was admissible for what it was worth, and not inadmissible for any cause stated.

Special ground 4 complains of the failure of the court "to instruct the jury, *at the time of its admission of said documentary evidence,* as to the purpose of said evidence and the reason for its introduction, and in not making any further explanation than, 'I'll let the letters go in as evidence,' and in failing to state to the jury fully the purpose and intent of said documentary evidence, when it was the duty of the court to so instruct the jury." (Italics ours.) The ground is without merit.

Special ground 6 assigns error on the failure of the court "to instruct the jury as to the probative value of the letters introduced in evidence, the purpose of this admission, how they should be received in evidence, and the weight and credit which they were entitled to receive by the jury; and the court erred in failing to charge the jury that said letters were not evidence of the commission of the crime for which the defendant was on trial and that they were not to be so considered, but that they were admissible for the sole purpose of illustrating to the jury the state of mind, motive of the defendant in the relation thereof to the alleged commission of the offense of murder as charged in the indictment; and that they could not be considered as evidence of the alleged charge of murder in the indictment; and that they, not being a part of the res gestæ, and being remote in time from the date of the alleged commission of said offense of murder, were to be received with caution and that they should receive only such consideration, weight, and credit as the jury might see fit to give them for the sole and only purpose of determining the state of mind and motive on the part of the defendant. Such a failure to charge was highly prejudicial and hurtful to the rights of the defendant to a fair and impartial trial; and movant avers that the court erred in its failure to so charge. There was no request for such a charge, and the solicitor-general, when he presented the letters for evidence,

stated to the court, and in the presence of the jury, that they were offered for the *purpose of showing motive on the part of the defendant;* and the jury, though laymen, must have understood that the letters could not be considered as evidence of the offense of murder, but could be considered only as tending to show the state of mind and motive of the defendant. This is not a close case, and under its particular facts, and in the absence of a request for such a charge, the failure to give it was not error, and the court did not abuse its discretion in overruling this ground.

Special ground 5 of the motion complains of the failure of the court to instruct the jury as to the weight that they should give to the following testimony of a witness for the State: "Last cotton-picking time, in August, she [defendant] told me if he [her husband] went off that night and came back and stuck his head in that door she was going to blow his head off and I could see him dead." In *MacDaniel* v. *State,* 100 *Ga.* 67 (27 S. E. 158), the court held: "In a trial for murder, threats by the accused against the deceased, though made a considerable period before the homicide, are admissible in evidence for the State as tending to show malice on the part of the accused; and the mere omission of the trial judge to charge the jury 'as to what weight they should give to the threats,' or 'as to how the jury should regard them in their deliberations,' is not cause for a new trial; the more especially when the accused was convicted of voluntary manslaughter only, the verdict thus negativing any conclusion that the killing was done in malice." We hold that the ground is without merit. The cases cited in the brief of counsel for the plaintiff in error are differentiated by their facts from this case.

The verdict was authorized by the evidence; and none of the special grounds of the motion for new trial show cause for another hearing of the case.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*